UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT RAY FERGUSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CORIZON HEALTH, INC.; RONA SIEGERT; PHILIPPE TIMMERMANS; ADREA NICODEMUS; DR. SANDRA ZAKROFF; KASEY HOLM; CHRISTAN GRIFFON; and LORI JOHNSON,<br><br>　　　　　　Defendants. | Case No. 1:21-cv-00338-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Robert Ray Ferguson's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1. Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).[2]

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center. Plaintiff claims that his constitutional right to adequate prison medical treatment was violated with respect to Plaintiff's "displaced distal phalanx fracture." *Compl*., Dkt. 3-1, at 8.

Plaintiff's right little finger was injured on January 27, 2021, during an altercation with another inmate. Two days later, Plaintiff was evaluated by an unidentified medical provider working for Corizon, Inc., the private company providing Idaho inmates with medical care under contract with the IDOC. On February 1, 2021, after an X-ray, Plaintiff was fitted for a splint on his right hand. *Id*. at 6. Plaintiff was then referred to an offsite

---

[2] Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend. *See Lopez*, 203 F.3d at 1130.

hand specialist to address the problem. According to the documentation submitted with the Complaint, a prison medical provider issued this referral on February 3, 2021, seven days after the initial injury and only two days after the X-ray. *Id*. at 15.

On February 25, 2021, Plaintiff was evaluated by the offsite hand specialist, Dr. Patrick Cole. *Id*. Dr. Cole determined that "'time sensitive' corrective surgery would be required to repair the fracture. *Id*. at 6. On March 5—eight days after the offsite evaluation—Plaintiff had a follow-up appointment with an onsite Corizon medical provider. *Id*. at 15. Two days later, on March 7, that provider submitted an "orthopedic consult," which appears to be a request for approval of the surgery recommended by Dr. Cole. *See id*. at 14–15.

Plaintiff was not informed of the status of this request until March 15, 2021, when Corizon staff told Plaintiff that he was approved for treatment. *Id*. at 6. That is, Corizon approved the surgery recommended by Dr. Cole at some point between March 7—when the provider submitted the request—and March 15. *Id*. at 7, 15.

On April 6, 2021, approximately three weeks later, Plaintiff prepared for the anticipated finger surgery by taking a COVID-19 test and was "housed in a medical cell to prevent food intake." *Id*. at 7. On April 7, Plaintiff was taken to Dr. Cole in anticipation of surgery. *Id*.

Unfortunately, after examining Plaintiff's finger, Dr. Cole determined that it was too late for surgery because Plaintiff's finger bones had fused together. *Id*. Dr. Cole told Plaintiff that "traditional corrective surgery was no longer a viable option due to the delay in the scheduling and/or performing of the surgery." *Id*. Plaintiff does not disclose whether

Dr. Cole discussed alternative treatments for the finger.

Plaintiff filed an administrative grievance with prison authorities. A non-defendant reviewed Plaintiff's medical chart and responded, "I see that a consult was entered in March[;] we received the approval in March, but the offsite provider was not able to see you until April." *Id*. at 13. Defendant Nicodemus concurred with that response and denied the grievance. Plaintiff appealed. Defendant Siegert, the Health Services Director for the IDOC, reviewed Plaintiff's course of treatment and concluded that it was Dr. Cole who was responsible for the scheduling of the appointments: "There does not appear to be a delay in your care by onsite medical. Both offsite appointments were scheduled by the specialists [sic] office." *Id*. at 15. Siegert affirmed the denial of Plaintiff's grievance.

The Complaint does not identify any particular prison medical provider who was involved in the treatment of Plaintiff's finger. Instead, Plaintiff sues Corizon as an entity, various Corizon medical supervisors (Defendants Timmermans, Nicodemus, Johnson, and Zakroff), a Corizon employee who scheduled Plaintiff's appointments with the offsite specialist (Defendant Griffon), a Corizon employee responsible for entering information into Plaintiff's medical chart (Defendant Holm), and the ultimate IDOC authority who affirmed the denial of Plaintiff's grievance (Defendant Siegert). *See id*. at 2–5.

Plaintiff brings this suit under 42 U.S.C. § 1983, the civil rights statute, and also appears to assert that his medical treatment constituted a breach of Corizon's contract with the IDOC. *Id*. at 10. Plaintiff asserts surgery-related claims arising from the alleged delay between his finger injury and the surgical appointment. Two periods of time are at issue: (1) a four-week delay between Plaintiff's injury and his first offsite evaluation by Dr. Cole

(January 27 to February 25, 2021); and (2) a six-week delay between that first offsite evaluation, when surgery was initially recommended, and the date the surgery was scheduled but not performed (February 25 to April 7, 2021).

Plaintiff also asserts pain management claims. He contends that he continues to suffer pain "associated with his deformed finger," but that unidentified Corizon medical personnel have not responded adequately to his requests for pain medication. *Id.* at 8.

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

## 3.   Section 1983 Claims

### A.   *Standards of Law Governing Plaintiff's § 1983 Claims*

To state a plausible civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged

constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff

must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

Administrative or supervisory defendants who were involved in reviewing claims in an administrative grievance process might—or might not—be liable for the constitutional violations complained of in those grievances, depending upon (1) the type and timing of problem complained of, and (2) the role of the defendant in the process. For example, an appeals coordinator cannot cause or contribute to a completed constitutional violation, which occurred in the past and which is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). A defendant whose only role in a completed constitutional

violation involved the denial of a grievance "cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

If, however, the administrative or supervisory defendant "knew of an ongoing constitutional violation and … had the authority and opportunity to prevent the ongoing violation," yet failed to act to remedy the violation, then the defendant may be held liable under § 1983. *Herrera v. Hall*, 2010 WL 2791586 at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045), *report and recomm'n adopted*, 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010). Where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal. 2014). Instead, the question is whether the plaintiff has plausibly alleged that the supervisor knowingly failed to address a treating provider's deficient care, thereby interfering with the plaintiff's medical treatment. *Id*.

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function—such as Corizon—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities). Under *Monell*, the requisite elements of a § 1983 claim against such a defendant are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or

custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a policy-based § 1983 claim may be maintained "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (internal quotation marks omitted), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B.    *Eighth Amendment Standards of Law*

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners

must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm,

*McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official or medical provider] should have been aware of the risk, but was not, then the [official or provider] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment,

a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

A court's review of a prison medical provider's choice of treatment should be especially deferential where the issue is pain medication. In such cases, the court "is asked to pass judgment on the attempts by prison medical staff to navigate between" the risk of "debilitating pain" and the competing risk of addiction. *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (unpublished). Where a prison medical provider believes in good faith that a certain course of pain treatment might "create or enable" a risk of addiction, the provider's decision not to provide that treatment "cannot be considered an act of deliberate indifference." *Id.* The Constitution "does not impose a constitutional obligation upon

prison officials" or prison medical providers "to enable a prisoner's substance abuse or addiction problem." *Id*. at 518.

### C.      The Complaint Fails to State Plausible § 1983 Claim

  i.      <u>Claims Against Defendants Griffon and Holm</u>

The only two Defendants that Plaintiff identifies as having been personally involved in the logistics or scheduling of his medical treatment are Corizon employees Griffon and Holm. Plaintiff alleges that Defendant Griffon is a "scheduling specialist" who did not schedule Plaintiff's surgery until it was too late, rendering surgery a non-viable treatment option. *Compl*. at 5. Plaintiff alleges that Defendant Holm was responsible for "the timely and accurate charting of medical data into Plaintiff's" medical file. *Id*. Plaintiff appears to assert that, after Plaintiff's first appointment with Dr. Cole, Holm did not immediately enter Dr. Cole's recommendation into Plaintiff's medical records, but did so at some later time. *Id*.

The Complaint plausibly alleges only that, according to Dr. Cole, the delay rendered surgery a non-viable option for treatment. Plaintiff's allegations do not support a reasonable inference that Defendant Holm or Griffon caused the delays. The "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, is that Dr. Cole's office was responsible for any delay in scheduling. *See Compl*. at 14 (non-defendant stating, in response to Plaintiff's grievance, "[T]he offsite provider was not able to see you until April."); *id*. at 15 (Defendant Siegert stating, in the grievance appeal, "Both offsite appointments were scheduled by the specialists [sic] office.").

In addition to the causation issue, the Complaint does not plausibly allege that

Defendants Holm or Griffon acted with deliberate indifference in (1) failing to enter information into Plaintiff's chart in a timely manner or (2) failing to schedule Plaintiff's off-site appointments earlier. To state a colorable deliberate indifference claim, Plaintiff must plausibly allege that Defendants Griffon and Holm subjectively knew of a substantial risk of serious harm to Plaintiff if his treatment were delayed and, yet, deliberately disregarded that risk. The Complaint as currently pleaded does not satisfy this standard.

      ii.      <u>Claims Against Corizon Employees Timmermans, Nicodemus, Johnson, and Zakroff</u>

In addition to Defendants Griffon and Holm, Plaintiff also sues various medical supervisors working for Corizon:

- Defendants Timmermans, Nicodemus, and Johnson were (or are) Health Services Administrators for Corizon. These Defendants were responsible for ensuring "the presence of adequately and appropriately trained staff and processes to meet emergent and routine healthcare needs, including off-site surgical care." *Compl*. at 4.

- Defendant Zakroff was (or is) the Facility Health Director at the prison. Zakroff was "responsible for overseeing and managing appointments for off-site surgery." *Id*. at 5.

Plaintiff has not plausibly alleged that any of these supervisors acted with deliberate indifference in failing to train subordinates in their respective spheres. Nothing in the Complaint suggests a "pattern of violations" such that the need for additional training was so obvious that the Defendant supervisors "can reasonably be said to have been deliberately

indifferent to the need." *Connick*, 563 U.S. at 72; *City of Canton*, 489 U.S. at 390. Plaintiff should keep these standards in mind when drafting an amended complaint.

      iii.    <u>Claims Against Defendant Siegert</u>

Plaintiff's claims against Defendant Siegert, who was the ultimate authority who affirmed the denial of Plaintiff's grievance, are also implausible. Defendant Siegert—like all other Defendants—was not Plaintiff's treating provider. Siegert reviewed Plaintiff's medical treatment after the fact and determined that the delay in Plaintiff's treatment occurred because Dr. Cole was unavailable to see Plaintiff earlier with respect to either appointment. *Compl*. at 15. The Complaint does not plausibly allege that Defendant Siegert knowingly failed to address deficient treatment given by Plaintiff's treatment providers. *See Gonzalez*, 67 F. Supp. 3d at 1156. Instead, Defendant Siegert's "only role … involved the denial of [Plaintiff's] administrative grievance" about his inability to receive surgery. *Shehee*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, the Complaint fails to state a plausible § 1983 claim against Siegert.

      iv.    <u>Claims Against Defendant Corizon</u>

      a)    *Claims re: Surgery*

Plaintiff asserts surgery-related claims against Corizon with respect to the delay between his injury and his offsite appointments. However, Plaintiff's allegations do not give rise to a plausible inference that Corizon has a policy or custom of delaying appointments to offsite providers. A delay of four to six weeks is not outside of the norm for scheduling appointments with specialists after referral from a general practitioner— even for free persons seeking medical care out in the community. And, as explained above,

the Complaint does not plausibly allege that, rather than limitations on Dr. Cole's availability, it was Corizon itself that caused the delays. *See Monell*, 436 U.S. at 694 (entity liability requires that the execution of an official policy or unofficial custom *of the entity* inflicted the plaintiff's injury).

b)    *Claims re: Pain Management*

Plaintiff also asserts a pain-related medical claim against Corizon. However, the only facts Plaintiff offers in support of this claim are that he continues to request "pain management" for his finger and that there has been "little" response to those requests by medical staff. *Compl.* at 8. Such allegations do not support a reasonable inference that Corizon, as an entity, has a policy or custom of denying medication for pain treatment—as opposed to Plaintiff's treatment being the result of individual decisions by Plaintiff's medical providers, in the exercise of their independent professional judgment and considering the benefits *and* the risks of pain medication. *See Baker*, 605 F. App'x at 519. Plaintiff should consider these standards if he chooses to file an amended complaint.

**4.    The Complaint Fails to State a Plausible Breach-of-Contract Claim**

In addition to § 1983 claims, Plaintiff appears to assert state law claims that Corizon breached its contract with the IDOC. *Compl.* at 10. However, these claims are implausible because Petitioner is not an intended third-party beneficiary of that contract.

Under Idaho law, "[a]bsent a manifested intent to the contrary," contracts between the state of Idaho and a private contractor "are generally not considered as being for the benefit of third persons. They are for the benefit of the state and the contractor." *Stewart v. Arrington Const. Co.,* 446 P.2d 895, 901 (Idaho 1968). The statutes governing the IDOC

simply do not indicate the required "manifested intent" to grant third-party beneficiary rights on Idaho state prisoners. *Id.*; *see generally* Title 20, Idaho Code. Because Plaintiff is not an intended third-party beneficiary of the contract between the IDOC and Corizon, the Complaint fails to state a plausible breach-of-contract claim.

Moreover, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's contract claim in any event. *See* 28 U.S.C. § 1367(c).

## 5.    Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 20

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.     The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Any amended complaint will be limited to 20 pages. *See* General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(a). Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[3]

---

[3] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

2.      Plaintiff's request for appointment of counsel (contained in the Complaint)

is DENIED without prejudice. Plaintiff may renew the request for counsel in

an amended complaint.

DATED: January 5, 2022

David C. Nye
Chief U.S. District Court Judge